A. Ray and Marion J. Elsea v. Commissioner.
Elsea v. Commissioner
Docket No. 6755.
United States Tax Court
1946 Tax Ct. Memo LEXIS 2; 5 T.C.M. (CCH) 1116; T.C.M. (RIA) 46298; December 31, 1946
*2 During the taxable year petitioner, A. Ray Elsea, was the bureau manager in Los Angeles, California, of an organization or cult known as "Mankind United." In such capacity he gave lectures and exhibited moving picture films for the organization. The principal part of his income from such activities was from enrollment fees received from those who enrolled in the organization for lecture courses. Part of each enrollment fee went to petitioner and parts to the district superintendent of the organization and to two others, one designated as captain and the other as lieutenant. Other receipts of petitioner were from offerings received at the lecture meetings. In his activities as lecturer and teacher for the organization petitioner incurred and paid certain necessary expenses. Held, from the evidence that certain of petitioner's receipts constituted gross income and certain expenditures constituted deductible necessary expenses. The respective amounts thereof are determined from the evidence. Howard B. Crittenden, Jr., Esq., for the petitioners. Byron M. Coon, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion The Commissioner has determined a deficiency in petitioners' income tax for the year 1941 of $986.14. The deficiency was determined by making the following adjustments to net income as reported on the joint income tax return filed by petitioners for the year 1941: ADJUSTMENTS TO NET INCOME
Net income as disclosed by return
$ 480.90
Unallowable deductions: Expenses claimed
7,962.62
Net income adjusted
$8,443.52
The deficiency notice contained the following explanation of the adjustments made by the Commissioner: Deductions claimed on your 1941 income tax return totalling $7,962.62 as representing: General office expenses $54.63, automobile expense $286.21, traveling expense $477.60, telephone $65.03, supplies and enrollment fees $4,636.39, film rental $2,000.41, postage and express $60.63, *4 discounts $278.00, and general expenses $103.72 have been disallowed since such deductions do not constitute ordinary and necessary expenses within the meaning of section 23 (a) of the Internal Revenue Code. Petitioners by appropriate assignments of error contest the correctness of the adjustments which the Commissioner has made. Findings of Fact Petitioners, A. Ray Elsea and Marion J. Elsea, are husband and wife and reside in Los Angeles, California. They filed their joint income tax return with the Collector of Internal Revenue at Los Angeles, California on February 4, 1942 for the calendar year 1941. Petitioner A. Ray Elsea will sometime hereafter be referred to as petitioner. Petitioner managed and operated at Los Angeles, under the name of "Ray of Light" a branch of an organization or cult called "Mankind United." This organization, with headquarters at San Francisco, California, was headed by Arthur L. Bell whose title was district superintendent. Bell was the immediate superior of petitioner. The organization had as its purpose the promotion of world peace through the enrollment of 200,000,000 people throughout the world; 20,000 enrollees were allocated *5 to the State of California. There were 16 branches or bureaus of the organization in California, one of which was operated by petitioner, A. Ray Elsea, as aforesaid. Each bureau had a manager, a captain and a lieutenant. These three officers engaged in securing members of the organization for an enrollment fee of $20. Of this fee the division superintendent received $6.00, the bureau manager $4.00, the captain $6.00 and the lieutenant $4.00. The activities of petitioner during the year 1941 involved the obtaining of an audience for the advancement of the movement in which he was engaged and during 1941 petitioner traveled with moving picture equipment, rented halls, and talked before audiences. At some of the meetings collections were taken but the principal source of revenue was the selling of lecture courses in the movement for $20 each. The petitioner paid rental on the movie equipment to the division superintendent in the sum of $2,000.41. The activity stopped with the outbreak of the war in December 1941. Petitioner's activities in the organization during 1941 required that he make trips on an average of twice a month to San Francisco to attend meetings of the organization and *6 make reports to and receive instructions from the district superintendent, Arthur L. Bell. In their original income tax return for the year 1941 which petitioners filed with the Collector at Los Angeles, petitioners reported gross income from "Teaching, Lecturing, book Agents & Films" of $9,767.59 from which the following deductions were taken: General Office Expenses
$ 573.72
Auto Expenses
286.21
Traveling Expense
477.60
Telephone
65.03
Bureau Supplies & Enrollment Fees
5,048.14
Hall Rentals
123.04
Film Rentals
2,000.41
Postage & Express
151.45
Discounts
278.00
Sales Tax Expense
179.37
General Expenses
103.72
Total
$9,286.69
After deducting the foregoing alleged expenses, petitioners' income tax return showed net income of $480.90. Later petitioners filed an amended income tax return which showed a total of gross income from "Teaching, Lect. Book Agents, Films" of $3,170.76. From this gross income of $3,170.76 petitioners claimed deductions of $2,689.79, itemized in a schedule attached to the return as follows: Office Supply Expense
$ 519.72
Postage
105.56
Express Charges
52.03
Telephone
65.03
Traveling Expense
455.50
Bureau Supplies
130.00
Hall Rentals
123.04
Auto Expense
258.42
F#108 Kits (Supplies)
124.00
Illustrated Lectures #1 (Supplies)
180.00
Printing
36.05
Office Equipment
360.33
Food for Workers
82.00
Money Order Fees
2.22
Notary Public Fees
.50
Car Fare
4.10
Sales Tax Makeup Fee
4.00
Sales Tax
186.54
Misc.
.75
Total
$2,689.79
*7 Petitioner's gross income for the year 1941 was $5,778.82, consisting of $3,778.41 either received directly from the division superintendent of "Mankind United" or from enrollment fees and lecture fees and $2,000.41 received from enrollment fees and which was used to pay rental charges on moving picture films which petitioner received from Arthur L. Bell, district superintendent and which he used in his lectures and teaching. During the year 1941 petitioner expended the following sums of money: (1) Expended for General Office Ex-
penses
$ 519.09
(2) Expended for Bureau Supplies and
Expenses of Enrollments
411.75
(3) Expended for Hall rentals
123.04
(4) Expended for postage and express
148.68
(5) Expended for sales tax
179.37
(6) Expense of operating automobile, $273, one-half of which is allowed
for business purposes
136.50
(7) Traveling Expenses in lecturing
and making an average of two
trips each month from Los Angeles
to San Francisco, California
233.25
(8) Amount paid for rental of moving
picture films used in lectures and
teaching
2,000.41
Total
$3,752.09
Opinion BLACK, Judge: The parties seem to be agreed that this proceeding presents *8 no question of law but only questions of fact. We agree to this conclusion. From evidence not altogether satisfactory but quite extensive in detail, we have made the foregoing findings of fact. Petitioners in the original income tax return which they filed reported as income the entire amount of enrollment fees which petitioner A. Ray Elsea received as bureau manager of the organization or cult known as "Mankind United." The evidence is clear that under the agreement which he had with Arthur L. Bell, district superintendent of the organization, petitioner was only entitled to retain a certain amount of these fees as his own and the balance which constituted the greater part of the enrollment fee collected, was to be paid over to the division superintendent and the captain and lieutenant of the Los Angeles bureau branch. At a subsequent date petitioner filed an amended return in which he omitted as part of his gross income the division of the enrollment fees which the district superintendent, the captain and the lieutenant were to receive and did receive. On this amended income tax return petitioner reported gross income of $3,170.76 against which he claimed deductions of $2,689.79 *9 as detailed in our findings of fact. Petitioners now concede that their gross income was $3,778.41. We think the evidence reasonably well establishes that this amount of $3,778.41 was the extent of petitioners' gross income in 1941 exclusive of the $2,000.41 which petitioners concede was used out of receipts to pay film rentals for moving pictures used in lecturing and teaching. We think it is proper to include this $2,000.41 in petitioners' gross income and we have done so in our findings of fact. The question then arises as to what deductions petitioners are entitled to have allowed in computing their net income. The Commissioner in his determination of the deficiency has allowed deductions of $1,324.07. This is clear from the fact that on their original return petitioners took deductions which totaled $9,286.69, of which the Commissioner in his determination of the deficiency disallowed $7,962.62. From a consideration of the separate items of expenses which the Commissioner disallowed and comparing them with the expense deductions which the petitioners claimed on their return, it is clear that the Commissioner in his determination of the deficiency has allowed the following *10 deductions: (1) General office expenses
$ 519.09
(2) Bureau supplies and enrollment ex-
penses
411.75
(3) Hall rentals
123.04
(4) Postage and express
90.81
(5) Sales tax
179.37
Total
$1,324.07
In making these allowances the Commissioner has allowed to petitioners substantially all the deductions to which they are entitled outside of the $2,000.41 which petitioners paid out for rentals of the moving picture films. These films were owned by the district superintendent at San Francisco. It had been agreed that petitioner would pay $10 a day for the use of these films in his lectures and teaching and the evidence clearly establishes that he made such payments and that the payments were made out of the enrollment fees which he collected. We have accordingly included this $2,000.41 in petitioners' gross income and have allowed them a deduction of the same amount. In addition to the deductions which the Commissioner allowed in his determination of the deficiency, we think petitioners have proved certain other deductions to which they are entitled, as follows: (1) Petitioner had an automobile which was used not only for his own and his wife's personal use but *11 also was used in making his lecture travels and in trips to and from San Francisco attending the meetings of "Mankind United." Petitioner has proved $273 as expenditures for gasoline and oil and repairs connected with the use of his automobile in 1941. Petitioner claims all of this as deductions. It is clear to us, however, that the use of the automobile must have been to a considerable extent for the personal use of petitioner and his wife. It, of course, requires no citation of authority to support the proposition that petitioner is not entitled to a deduction for expenses of operating his automobile in personal use. We have accordingly allowed petitioner a deduction of one-half of his automobile expenses and have disallowed the balance. (2) Another deduction which the Commissioner disallowed in his computation of the deficiency was $477.60 for traveling expenses and hotel bills. Petitioner claims that he has proved $466.50 of such expenditures and should be allowed a deduction of that amount. It is true that petitioner has proved that he had certain expenditures for hotel bills, meals and lodging in his lecture travels and trips to San Francisco. He has these expenditures listed *12 by separate months which come to a total of $466.50. Some of these expenditures are supported by receipts but the greater part are listed as "Amounts approximated. No receipts." Using our best judgment on the evidence submitted, we have allowed petitioner one-half of the amounts which he has listed as "Traveling Expense (Hotel Room, etc.)". As said by the court in Cohan v. Commissioner, 39 Fed. (2d) 540, "absolute certainty in such matters is usually impossible and is not necessary; the Board should make as close an approximation as it can, bearing heavily if it chooses upon the taxpayer whose inexactitude is of his own making." We have increased one of the deductions allowed by the Commissioner in his determination of the deficiency. The allowance by the Commissioner of postage and express has been increased from $90.81 as allowed by the Commissioner to $148.68 as established by the evidence at the hearing. In his "Summary of Bureau Disbursements for 1941" filed by petitioner at the hearing as Exhibit 5, petitioner lists numerous other expenditures and supports them by receipts. We find, however, by a careful examination that the Commissioner has allowed most of these *13 as deductions in his determination of the deficiency. We, therefore, find it unnecessary and unwarranted to grant petitioner any further deductions than those enumerated above. Petitioner in his brief claims deduction of depreciation of $400 on automobile used in his business and $120.11 depreciation on office equipment. Evidence in the record is lacking to substantiate these claimed deductions. The cost of the automobile is not shown nor is the cost of the office equipment proved. Also evidence is lacking to establish the rate of depreciation even if the cost had been proved. These claims for depreciation are accordingly disallowed because of the lack of adequate evidence to support them. Decision will be entered under Rule 50